UNITED STATES COURT FOR THE
WESTERN DISTRICT OF TEXAS

THE UNITED STATES OF AMERICA,

THE STATE OF ALASKA,

THE STATE OF HAWAII, AND

THE NORTHWEST CLEAN AIR AGENCY

     Plaintiffs,

v.

TESORO REFINING & MARKETING
COMPANY LLC,

TESORO ALASKA COMPANY LLC,

TESORO LOGISTICS L.P.,

AND

PAR HAWAII REFINING, LLC,

     Defendants.

Civ. No.  SA-16-cv-00722

## **FIRST MATERIAL MODIFICATION TO THE CONSENT DECREE**

WHEREAS, Plaintiff the United States of America ("United States"); Plaintiffs the State

of Alaska, the State of Hawaii, and the Northwest Clean Air Agency ("State Co-Plaintiffs"); and

Defendants Tesoro Alaska Company LLC, Tesoro Logistics L.P., Tesoro Refining & Marketing

Company LLC, and Par Hawaii Refining, LLC ("Settling Defendants") are parties to a Consent

Decree entered by this Court on September 28, 2016 ("2016 Consent Decree");

WHEREAS, the 2016 Consent Decree required, among other things, that Tesoro Refining & Marketing Company LLC ("Tesoro") control the emissions of nitrogen oxides ("$NO_X$") from the Fluid Catalytic Cracking Unit at its refinery located in Martinez, California ("Martinez Refinery FCCU") by complying with a final long-term (365-day rolling average) $NO_X$ emission limit of 20 parts per million by volume, dry basis (at 0% oxygen) no later than July 1, 2018 ("2016 Consent Decree Final Long-Term Martinez FCCU $NO_X$ Emission Limit");

WHEREAS, the United States alleges that Tesoro violated the 2016 Consent Decree Final Long-Term Martinez FCCU $NO_X$ Emission Limit;

WHEREAS, the United States alleges that the Bay Area Air Quality Management District ("BAAQMD") has issued federally-enforceable permits incorporating the 2016 Consent Decree Final Long-Term Martinez FCCU $NO_X$ Emission Limit and each of Tesoro's violations of that limit thereby constitutes a violation of such permits and the Clean Air Act in addition to a violation of the 2016 Consent Decree;

WHEREAS, Tesoro does not admit any liability arising out of the occurrences alleged in this First Material Modification to the Consent Decree;

WHEREAS, Tesoro idled petroleum refining operations at its refinery in Martinez, California, as of May 1, 2020; and, on September 13, 2022, received a permit to construct from the BAAQMD to convert the existing refinery from the production of fossil fuels to the production of renewable fuels;

WHEREAS, on May 5, 2022, the Contra Costa County Department of Conservation and Development issued a Notice of Determination under the California Environmental Quality Act approving the project that will repurpose the Refinery for production of fuels from renewable sources rather than from crude oil, which Tesoro expects will begin production of renewable

fuels in late 2022 or early 2023 and achieve full production of 48,000 barrels per day of renewable fuels by the end of 2023;

WHEREAS, the United States and Tesoro desire to modify the 2016 Consent Decree to resolve the alleged violations of the 2016 Consent Decree Final Long-Term Martinez FCCU $NO_X$ Emission Limit and permits incorporating such limit by requiring Tesoro to (i) install and operate Selective Catalytic Reduction control technology and implement more stringent $NO_X$ emission limits on the Martinez Refinery FCCU prior to restarting the Martinez Refinery FCCU in the event that Tesoro resumes petroleum refining at the Martinez Refinery; (ii) mitigate excess $NO_X$ emissions caused by its alleged violations by retiring more than 90 percent of the Martinez Refinery's existing $NO_X$ emission credits and by implementing a more stringent $NO_X$ emission limit on the No. 6 Boiler, which is the Martinez Refinery's third largest $NO_X$-emitting source; and (iii) pay an appropriate civil penalty for the 2016 Consent Decree and Clean Air Act violations;

WHEREAS, the United States and Tesoro also desire to modify the 2016 Consent Decree to establish new requirements that apply if Tesoro does not resume petroleum refining and converts the existing Martinez Refinery to a non-petroleum refinery facility, including (i) requirements for the permanent shutdown and permit surrender of specific refinery units; (ii) requirements for heaters, boilers, flares, and leak detection and repair that are comparable to the petroleum refinery requirements in the 2016 Consent Decree; and (iii) requirements to render the Martinez FCCU and No. 6 Boiler permanently inoperable;

WHEREAS, (i) as part of this First Material Modification to the Consent Decree, Tesoro agreed to forego seeking emission reduction credits from the shutdown of multiple units associated with the conversion of the Martinez Refinery to a non-petroleum refinery facility,

except for a small subset of credits used for permitting the conversion; (ii) the emission reduction credits ultimately generated from such shutdowns were twelve tons per year of $NO_X$, one ton per year of sulfur dioxide ("$SO_2$"), and ten tons per year of volatile organic compounds ("VOC") used for permitting the conversion; (iii) the estimated credits Tesoro agreed to forego, based solely on average emissions from the shutdowns prior to the refinery idling, were 318 tons per year of $NO_X$, 327 tons per year of $SO_2$, 697 tons per year of carbon monoxide, 69 tons per year of VOC, 301 tons per year of $PM_{2.5}$, and 1,342,025 metric tons per year of carbon dioxide equivalent; and (iv) since emission reduction credits under local rules are partly based on average emissions over multiple years, the amount of these estimated credits has diminished over time while the refinery remained idled;

WHEREAS, Tesoro Refining & Marketing Company LLC transferred ownership of some emissions units at its refinery in Martinez, California, to Martinez Renewables LLC, a Delaware limited liability company that owns the renewable fuels production facility;

WHEREAS, in this First Material Modification to the Consent Decree, Martinez Renewables LLC has agreed to comply with the 2016 Consent Decree as modified by this First Material Modification to the Consent Decree for all assets, facilities, and/or equipment that it owns or operates at the Martinez Facility;

WHEREAS, this First Material Modification to the Consent Decree does not affect, alter, modify, or amend any obligations or requirements pertaining to any refinery or facility covered by the 2016 Consent Decree other than as expressly stated herein;

WHEREAS, Paragraph 251 of the 2016 Consent Decree requires that this First Material Modification to the Consent Decree be signed by the United States and Tesoro and approved by the Court before it is effective;

WHEREAS, the United States and Tesoro have agreed, and this Court by entering this First Material Modification to the Consent Decree finds, that this First Material Modification to the Consent Decree has been negotiated in good faith and at arm's length; that this settlement is fair, reasonable, and in the public interest, and consistent with the goals of the Clean Air Act, 42 U.S.C. § 7401 et seq.; and that entry of this First Material Modification to the Consent Decree without further litigation is the most appropriate means of resolving this matter;

WHEREAS, the United States and Tesoro agree and acknowledge that final approval of the United States and entry of this First Material Modification to the Consent Decree is subject to the procedures set forth in 28 C.F.R. § 50.7, which provides for notice of this First Material Modification to the Consent Decree in the *Federal Register*, an opportunity for public comment, and the right of the United States to withdraw or withhold consent if the comments disclose facts or considerations which indicate that this First Material Modification to the Consent Decree is inappropriate, improper, or inadequate;

WHEREAS, Tesoro consents to entry of this First Material Modification to the Consent Decree without further notice and agrees not to withdraw from or oppose entry of this First Material Modification to the Consent Decree by this Court or challenge any provision of this First Material Modification to the Consent Decree, unless the United States has notified Tesoro, in writing, that the United States no longer supports entry of the First Material Modification to the Consent Decree;

NOW THEREFORE, the United States and Tesoro hereby agree that, upon approval of this First Material Modification to the Consent Decree, the 2016 Consent Decree shall be modified as follows:

1.     *Paragraph 6 of the 2016 Consent Decree is deleted in its entirety and the*

*following substituted in lieu thereof:*

"6.     <u>Settling Defendants Responsible for Compliance</u>.  The following table

identifies the Settling Defendant responsible for compliance at each Covered Refinery.

| Covered Refinery | Settling Defendant Responsible for Compliance with this Consent Decree |
|---|---|
| Anacortes | Tesoro Refining & Marketing Company LLC |
| Kapolei | Par Hawaii Refining, LLC |
| Kenai | Tesoro Alaska Company LLC |
| Mandan | Tesoro Refining & Marketing Company LLC |
| Martinez | Tesoro Refining & Marketing Company LLC |
| Salt Lake City | Tesoro Refining & Marketing Company LLC |

In addition, during the term of this Consent Decree, Tesoro Logistics L.P. shall be responsible

for compliance with respect to all assets, facilities, and/or equipment that it owns or operates at

one or more of the Covered Refineries.  To the extent that such assets, facilities, and/or

equipment is owned or operated by another Settling Defendant, such Settling Defendant shall

also be responsible for compliance.  Furthermore, Martinez Renewables LLC shall be

responsible for compliance with respect to all assets, facilities, and/or equipment that it owns or

operates at the Martinez Facility at any time during the term of this Consent Decree.  To the

extent that such assets, facilities, and/or equipment is also or jointly owned or operated by

another Settling Defendant, such Defendant shall also be responsible for compliance."

2.     *Paragraph 8 of the 2016 Consent Decree is deleted in its entirety and the*

*following subsituted in lieu thereof:*

"8.     Prior to Termination of this Consent Decree pursuant to Section XXI

below, Settling Defendants shall condition any transfer, in whole or in part, of ownership or

operation of any Covered Refinery upon the execution by the transferee of a modification to this

Consent Decree pursuant to Section XX (Modification), which makes the terms and conditions

of this Consent Decree applicable to the transferee, but only to the extent that such terms and

conditions affect the transferee's ownership or operation of the applicable Covered Refinery.  No

earlier than thirty (30) Days after giving notice of a successor in interest pursuant to Paragraph 7

above, the Settling Defendant transferring ownership or operation may file a motion to modify

this Consent Decree in accordance with Section XX below with the Court to make the terms and

conditions of this Consent Decree applicable to the transferee.  A Settling Defendant transferring

both ownership and operation shall be released from the obligations and liabilities of this

Consent Decree unless the United States or the Applicable State Co-Plaintiff opposes the motion

and the Court finds that the transferee does not have the financial and technical ability to assume

the obligations and liabilities under this Consent Decree.  Notwithstanding the foregoing, nothing

in this provision mandates modification of this Consent Decree or notice to the United States or

Applicable State Co-Plaintiff for transfer of ownership or operation of a Covered Refinery or

part thereof by a Settling Defendant to Tesoro Logistics L.P.  In addition, and notwithstanding

the foregoing, nothing in this provision mandates modification of this Consent Decree or notice

to the United States for transfer of ownership or operation of the Martinez Facility or part thereof

by a Settling Defendant to Martinez Renewables LLC, provided that the terms and conditions of

this Consent Decree applicable to the Settling Defendant apply also to Martinez Renewables

LLC upon transfer."

    *3. Paragraph 11 of the 2016 Consent Decree is modified to (i) replace the*

*references to the Martinez Refinery in the definitions of "Covered Refineries" and "Permitting*

*Authority" (all other language in the definitions of "Covered Refineries" and "Permitting*

*Authority" remains unchanged); (ii) include new definitions of "First Material Modification*

*Effective Date," "First Material Modification Lodging Date," "Martinez Facility," "Martinez*

*Non-Petroleum Refinery Facility," "Martinez Refinery," and "Petroleum Refining;" (iii) delete*

*in its entirety and replace the definition of "Martinez Refinery Sulfuric Acid Plant" with the*

*definition of "Martinez Facility Sulfuric Acid Plant;" and (iv) delete in their entirety and replace*

*the definitions of "Settling Defendants," "Tesoro," and "Tesoro Refineries;" as follows (all*

*other definitions remain unchanged):*

"….

"Covered Refineries" shall mean the following facilities, each one of which is a

"Covered Refinery" as that term is used herein:

….

Martinez Facility including its Sulfuric Acid Plant
150 Solano Way
Martinez, CA 94553

….

….

"First Material Modification Effective Date" shall mean the date on which the

First Material Modification to the Consent Decree is approved pursuant to Paragraph 251 of this

Consent Decree by the United States District Court for the Western District of Texas as indicated

on the Court's docket.

"First Material Modification Lodging Date" shall mean the date on which the

First Material Modification to the Consent Decree is filed with the United States District Court

for the Western District of Texas pursuant to Paragraph 251 of this Consent Decree.

….

"Martinez Facility" shall mean either the Martinez NPR Facility or the Martinez Refinery, whichever exists at the time, located at or near 150 Solano Way in Martinez, California.  The Martinez Facility includes the facilities that are part of (i) the revised Title V Permit for BAAQMD Facility Nos. B2758 (including, but not limited to, the Sulfuric Acid Plant and the Avon Terminal) and B2759 (the Amorco Terminal), issued on January 11, 2016; or (ii) any subsequent Title V Permits.

"Martinez Non-Petroleum Refinery Facility" or "Martinez NPR Facility" shall mean all facilities, stationary sources, affected facilities, affected sources, emissions units, process units, and equipment within the boundaries of the Martinez Facility provided no Petroleum Refining occurs within those boundaries.  The terms "Martinez Refinery" and "Martinez NPR Facility" are mutually exclusive.  The Martinez NPR Facility may include the production of renewable fuels and/or the engagement in non-Petroleum Refining stand-alone operations such as sulfuric acid production, bulk gasoline storage, or marine loading.  The Martinez NPR Facility may also include facilities, stationary sources, affected facilities, affected sources, emissions units, process units, or equipment formerly used as part of the Martinez Refinery but subsequently idled or permanently shut down (e.g., emission units and associated emission sources in Appendix A-3 of this Consent Decree).

"Martinez Refinery" shall mean any facilities, stationary sources, affected facilities, affected sources, emissions units, process units, and equipment used for Petroleum Refining within the boundaries of the Martinez Facility.

….

"Martinez Facility Sulfuric Acid Plant" or "Martinez SAP" shall mean a process unit engaged in the production of sulfuric acid and related products using the contact process at or adjacent to the Martinez Facility.

….

"Permitting Authority" or "Applicable Permitting Authority" shall mean the following air permitting authorities for each Refinery:

….

Martinez Facility:  BAAQMD

….

"Petroleum Refining," for the purpose of the Paragraph 11 definitions of "Martinez NPR Facility" and "Martinez Refinery" only, shall mean the production of gasoline, diesel fuels, jet fuels, kerosene, fuel oils, fuel gas distillate, distillate fuel oils, residual fuel oils, lubricants, asphalt, or other products through (i) distillation or separation of petroleum; (ii) redistilling, separating, cracking, reacting, or reforming of an unfinished petroleum derivate or intermediate petroleum stream; or (iii) recovering a byproduct from an intermediate petroleum stream (e.g., sulfur recovery).  For the purpose of this definition, "petroleum" shall mean the crude oil removed from the earth and the oils derived from tar sands, shale, and coal.

….

"Settling Defendants" shall mean Tesoro, Tesoro Logistics L.P., and Par. Although not named as a defendant in the Complaint, Martinez Renewables LLC shall be considered a Settling Defendant under this definition for the purpose of complying with the terms and conditions of this Consent Decree.

….

"Tesoro" shall mean each of the following Tesoro entities:  Tesoro Refining & Marketing Company LLC and Tesoro Alaska Company LLC, including their successors in interest and assigns.  The term "Tesoro" shall also mean Martinez Renewables LLC, including its successor in interest and assigns, with respect to all assets, facilities, and/or equipment that it owns or operates (including, but not limited to, assets, facilities, and/or equipment that it also or jointly owns or operates) at the Martinez Facility.

"Tesoro Refineries" shall mean the Anacortes, Kenai, Mandan, and Salt Lake City refineries and the Martinez Facility listed above.

…."

4.     *The title of Section V.E of the 2016 Consent Decree is deleted and replaced as follows:*

"**E.     Martinez Facility**".

5.     *Paragraph 42 of the 2016 Consent Decree shall be modified to include the following new definitions under new subparagraphs 42.d, 42.e, and 42.f (all other definitions remain unchanged):*

"….

d.     "Martinez Refinery FCCU SCR" or "Martinez FCCU SCR" shall mean the Selective Catalytic Reduction control technology to be installed, operated, and maintained on the Martinez Refinery FCCU under Paragraph 43.a below.

e.     "Martinez Refinery No. 6 Boiler" or "Martinez No. 6 Boiler" shall mean the No. 6 Riley Stoker Refinery Fuel Gas Boiler (BAAQMD Source S904), with a rated capacity of 745 MMBtu/hr.

f.      "Selective Catalytic Reduction" or "SCR" shall mean an air pollution control device consisting of ammonia injection and a catalyst bed to selectively catalyze the reduction of $NO_X$ with ammonia to nitrogen and water."

6.      *Paragraph 43 of the 2016 Consent Decree is deleted in its entirety and the following substituted in lieu thereof:*

"43.    Martinez Refinery FCCU $NO_X$ Control Technology and Emission Limits. Tesoro shall comply with the following requirements for the Martinez Refinery FCCU.

a.      Martinez FCCU SCR Installation, Maintenance, and Operation. Prior to operating the Martinez FCCU at any time after May 1, 2020, Tesoro shall install, maintain, and operate the Martinez FCCU SCR to control $NO_X$ emissions from the Martinez FCCU; and shall operate the Martinez FCCU SCR at all times the Martinez FCCU operates.  At all times, including periods of Startup, Shutdown, or Malfunction of the Martinez FCCU, Tesoro shall, to the extent practicable, maintain and operate the Martinez FCCU and the Martinez FCCU SCR in a manner consistent with good air pollution control practice for minimizing emissions.

b.      Limits.  Beginning no later than May 1, 2020, Tesoro shall comply with the following emission limits at the Martinez FCCU:  (i) a short-term FCCU $NO_X$ emission limit of 20 ppmvd $NO_X$ @ 0% $O_2$ (7-day rolling average) ("Short-Term Martinez FCCU $NO_X$ Emission Limit"); and (ii) a long-term FCCU $NO_X$ emission limit of 10 ppmvd $NO_X$ @ 0% $O_2$ (365-day rolling average) ("Long-Term Martinez FCCU $NO_X$ Emission Limit").

c.      Startup, Shutdown, or Malfunction.  $NO_X$ emissions during periods of Startup, Shutdown, or Malfunction of the Martinez FCCU or Malfunction of the associated $NO_X$ control equipment shall not be used in determining compliance with the Short-Term Martinez FCCU $NO_X$ Emission Limits (i.e., 7-day rolling average) required by this Paragraph,

provided that during such periods Tesoro, to the extent practicable, maintains and operates the Martinez FCCU, including associated air pollution control equipment, in a manner consistent with good air pollution control practices for minimizing emissions.  The Long-Term Martinez $NO_X$ Emission Limits shall apply at all times.

    d. <u>Martinez FCCU CO Boiler</u>.  Compliance with the $NO_X$ emission limits established pursuant to this Paragraph 43 shall be determined by measuring the emissions from the Martinez FCCU CO Boiler exit stack (as opposed to measuring the gases exiting the Martinez FCCU Catalyst Regenerator prior to the gases entering the Martinez FCCU CO Boiler).

    e. <u>Exceptions to the Martinez FCCU $NO_X$ Emission Limits</u>.

      i. The Short-Term and Long-Term Martinez FCCU $NO_X$ Emission Limits shall not apply at the Martinez FCCU CO Boiler exit stack when the Martinez FCCU CO Boiler is operating and firing only refinery fuel gas (i.e., not processing gases from the Martinez FCCU Catalyst Regenerator).

      ii. When the Martinez FCCU CO Boiler is not operational, Tesoro may comply with a short-term Martinez FCCU $NO_X$ emission limit of 40 ppmvd $NO_X$ @ 0% $O_2$ (3-hour average) ("Short-Term Martinez FCCU CO Boiler Shutdown $NO_X$ Emission Limit") in lieu of the Short-Term Martinez FCCU $NO_X$ Emission Limit.  However, this Short-Term Martinez FCCU CO Boiler Shutdown $NO_X$ Emission Limit can only apply for a total of 720 hours or less in a calendar year.  The Long-Term Martinez $NO_X$ Emission Limits shall apply at all times, regardless of whether (i) the Martinez FCCU CO Boiler is operational or not; or (ii) Tesoro applied the Short-Term Martinez FCCU CO Boiler Shutdown $NO_X$ Emission Limit for 720 hours in a calendar year, less than a total of 720 hours in a calendar year, or for more than a total of 720 hours in a calendar year."

7.     *The title prior to Paragraph 52 ("SO$_2$ Emissions Reductions from the Martinez Refinery Sulfuric Acid Plant") of the 2016 Consent Decree is deleted and replaced as follows:*

**"SO$_2$ Emissions Reductions from the Martinez Facility Sulfuric Acid Plant"**.

8.     *Paragraph 57 of the 2016 Consent Decree is deleted in its entirety and the following substituted in lieu thereof:*

"57.     Appendix A-2 to this Consent Decree contains those requirements from the 2005 Martinez Consent Decree applicable to the Martinez Refinery that are being incorporated into this Consent Decree.  Tesoro shall comply with all requirements set forth in Appendix A-2."

9.     *Paragraph 58 of the 2016 Consent Decree is deleted in its entirety and the following substituted in lieu thereof (including a new title prior to the Paragraph 58 substitution):*

**"Martinez No. 6 Boiler NO$_X$ Limits, NO$_X$ Emission Reduction Credit Retirement, and the Idling of Specific Martinez Facility Emission Units**

58.     <u>Martinez Refinery No. 6 Boiler NO$_X$ Emission Limits, NO$_X$ Emission Reduction Credit Retirement, and the Idling of Specific Martinez Facility Emission Units</u>.

a.     <u>Martinez Refinery No. 6 Boiler NO$_X$ Emission Limits</u>.  Beginning no later than May 1, 2020, Tesoro shall comply with the following emission limits and maximum firing rate at the Martinez Refinery No. 6 Boiler:  (i) a long-term Martinez No. 6 Boiler NO$_X$ emission limit of 15 ppmvd NO$_X$ @ 0% O$_2$ (365-day rolling average); (ii) a long-term Martinez No. 6 Boiler NO$_X$ emission limit of 30.6 tons per year (365-day rolling average); and (iii) a long-term Martinez No. 6 Boiler maximum firing rate of 465 MMBtu/hr higher heating value (365-day rolling average).  Tesoro shall comply at all times with the emission limits and maximum

firing rate in this Paragraphs 58.a (including, but not limited to, during periods of Startup, Shutdown, or Malfunction of the Martinez No. 6 Boiler, or Startup, Shutdown, or Malfunction of the associated $NO_X$ control equipment), using CEMS, stack flue gas flow meter, and fuel flow meters that comply with Paragraph 58.a.i.

        i.    <u>CEMS, Stack Flue Gas Flow Meter, and Fuel Flow Meter Requirements</u>. Beginning no later than the May 1, 2020, Tesoro shall use $NO_X$ CEMS, $O_2$ CEMS, stack flue gas flow meter, and fuel flow meters to monitor performance of the Martinez No. 6 Boiler and to report compliance with the terms and conditions of Paragraph 58.a. CEMS shall be used to demonstrate compliance with the $NO_X$ emission limits established pursuant to Paragraph 58.a. The stack flue gas flow meter and fuel flow meters, which shall be installed in each fuel line of the Martinez No. 6 Boiler, shall be used to demonstrate compliance with the maximum firing rate established pursuant to Paragraph 58.a. Tesoro shall make CEMS, stack flue gas flow meter, and fuel flow meter data available to EPA upon request. Tesoro shall install, certify, calibrate, maintain, and operate all fuel flow meters required by this Paragraph 58.a in accordance with the provisions of 40 C.F.R. § 98.3(i)(1)-(3) and Title 17 of the California Code of Regulations § 95103(k). Tesoro shall install, certify, calibrate, maintain, and operate all CEMS required by this Paragraph 58.a in accordance with the provisions of 40 C.F.R. § 60.13 that are applicable to CEMS (excluding those provisions applicable only to COMS) and Part 60, Appendices A and F, and the applicable performance specification test of 40 C.F.R. Part 60, Appendix B. With respect to 40 C.F.R. Part 60, Appendix F, in lieu of the requirements of 40 C.F.R. Part 60, Appendix F §§ 5.1.1, 5.1.3 and 5.1.4, Tesoro shall conduct either a RAA or a RATA on each CEMS at least once every three (3) years. Tesoro shall also conduct CGAs each

Calendar Quarter during which a RAA or a RATA is not performed.  Tesoro may conduct a FAT in lieu of the required RAA or CGA.

        b.      <u>$NO_X$ Emission Reduction Credit Retirement</u>.  By no later than 30 Days following the First Material Modification Effective Date, Tesoro shall submit applications to BAAQMD, in accordance with BAAQMD rules and regulations, to surrender and permanently retire (including, but not limited to, never using, selling, or transferring) the following banked emission reduction credits:

        i.      64.454 tons per year of $NO_X$ (i.e., all the $NO_X$ emission reduction credits) for Certificate No. 1741, which BAAQMD issued on November 27, 2019, relating to the removal of the former Martinez Refinery Alkylation Plant Gas Turbine 177 (BAAQMD Source S963); and

        ii.      57.725 tons per year of $NO_X$ of the 66.391 total tons per year of $NO_X$ for Certificate No. 1144, which BAAQMD issued on February 24, 2009, relating to the replacement of the former Martinez Refinery Fluid Coker (BAAQMD Sources S806, S903, S924, and S925) with the Martinez Refinery Delayed Coker.

        c.      <u>Idling of Specific Martinez Facility Emission Units</u>.  By the dates specified in Appendix A-3, Tesoro shall idle (i.e., not operate) each and every emission unit and associated emissions sources in Appendix A-3 of this Consent Decree and shall not Startup any such emission units and associated emissions sources until Tesoro either fully complies with all the requirements of Paragraph 43(a) and (b) (Martinez FCCU SCR Installation, Maintenance, and Operation and Limits) or fully complies with all the requirements of Paragraph 59(e) (Martinez Facility Emission Unit Permanent Shutdown).

     i. <u>Transfer of Ownership or Operation of Emission Units in</u> <u>Appendix A-3</u>.  In no event shall Tesoro transfer the ownership or operation (including, but not limited to, any transfer of ownership or operation to Martinez Renewables LLC) of any emission unit or associated emission sources (in whole or in part) in Appendix A-3 until Tesoro has shut down such emission unit or associated emission sources and has surrendered all permits for such emission unit or associated emission sources (including, but not limited to, EPA or BAAQMD NSR permits, PSD permits, authorities to construct, or permits to operate).  For the Martinez No. 6 Boiler only, in addition to the permanent shutdown and permit surrender requirements of this Paragraph 58.c.i, Tesoro shall render the Martinez No. 6 Boiler permanently inoperable by destroying at least twenty percent of the No. 6 Boiler internal boiler tubes prior to any transfer of ownership.  For the Martinez FCCU only, in addition to the permanent shutdown and permit surrender requirements of this Paragraph 58.c.i, Tesoro shall render the Martinez FCCU permanently inoperable by demolishing the FCCU main air blower and the turbine prior to any transfer of ownership."

   10. *Paragraph 59 of the 2016 Consent Decree, which is marked as "[Reserved]" under Section V.F ("SLC Refinery") of the 2016 Consent Decree is deleted and replaced with the following new Paragraph 59 (including a new title prior to this new Paragraph 59) which shall be inserted at the end of Section V.E of the 2016 Consent Decree as affirmative relief applicable to the Martinez Facility:*

    "***Martinez Non-Petroleum Refinery Facility Requirements***

   59. <u>Martinez Non-Petroleum Refinery Facility Requirements</u>.  The requirements of this Paragraph 59 shall apply to the Martinez NPR Facility.  At Tesoro's option, it may convert the Martinez Refinery into the Martinez NPR Facility by sending a Notice of

Conversion to the United States pursuant to Section XIX (Notices).  Until submission of the

Notice of Conversion, the Martinez Refinery shall comply with all requirements applicable

thereto in this Consent Decree, including, but not limited to, Section V.E. (except Paragraph 59.b

through 59.d), VI.A, and VI.B.  After submission of the Notice of Conversion, the Martinez NPR

Facility shall comply with the following requirements and prohibitions set forth in this Paragraph

59.a through d below, unless or until the Martinez Facility meets the definition of "Martinez

Refinery" in Paragraph 11 of this Consent Decree (at which point the Martinez Refinery shall

again comply with all requirements applicable thereto in this Consent Decree, including, but not

limited to, Sections V.E. (except Paragraph 59.b through 59.d), VI.A, and VI.B).

       a.     <u>Martinez Facility Sulfuric Acid Plant Requirements</u>.  Tesoro shall

continue to comply with the Martinez SAP requirements of Paragraphs 52 through 56 and

Appendix A-1 of this Consent Decree.

       b.     <u>Heaters and Boilers Requirements</u>.  In place of the heaters and

boilers requirements of Sections E and F of Appendix A-2 of this Consent Decree, Tesoro shall

comply with the heaters and boilers requirements set forth in Appendix A-4 of this Consent

Decree.

       c.     <u>Leak Detection and Repair Requirements</u>.  In place of the ELDAR

requirements of Section VI.A of this Consent Decree, Tesoro shall comply with the leak

detection and repair requirements set forth in Appendix A-6 and all applicable BAAQMD LDAR

requirements and 40 C.F.R. Part 63, Subparts EEEE and FFFF LDAR requirements.  If

BAAQMD LDAR requirements and Subparts EEEE or FFFF LDAR requirements differ, Tesoro

shall comply with the more stringent LDAR requirements.  Nothing in this Paragraph 59 shall

relieve Tesoro of its obligation to comply with all BAAQMD LDAR requirements and 40 C.F.R.

Part 63, Subparts EEEE or FFFF LDAR requirements that apply to the Martinez Facility prior to submission of the Notice of Conversion.

d.   <u>Flaring Requirements</u>.  In place of the flaring requirements of Section VI.B of this Consent Decree, Tesoro shall comply with the flaring requirements set forth in Appendix A-5 of this Consent Decree.

e.   <u>Martinez Facility Emission Unit Permanent Shutdown</u>.

i.   <u>Emission Unit Permanent Shutdown</u>.  For each emission unit and associated emission sources in Appendix A-3 of this Consent Decree, Tesoro shall permanently shut down the emission unit and associated emission sources by no later than the date Tesoro submits the Notice of Conversion under Paragraph 59.

ii.   <u>Emission Unit Permit Surrender</u>.  For each emission unit and associated emission sources in Appendix A-3 of this Consent Decree, Tesoro shall surrender all permits for that emission unit and associated emission sources (including, but not limited to, EPA or BAAQMD NSR permits, PSD permits, authorities to construct, or permits to operate) by no later than the date Tesoro submits the Notice of Conversion under Paragraph 59.

iii.   <u>Permanent Disabling of Martinez FCCU and Martinez No. 6 Boiler</u>.  For the Martinez FCCU and Martinez No. 6 Boiler only, in addition to the permanent shutdown and permit surrender requirements of Paragraph 59.e.i-ii above, Tesoro shall render the Martinez FCCU and Martinez No. 6 Boiler permanently inoperable by demolishing the FCCU main air blower and turbine and destroying at least twenty percent of the No. 6 Boiler internal boiler tubes.

f.   <u>Emissions Reductions Associated with Emission Units in Appendix A-3</u>.  Except for those emission units and associated emission sources explicitly

excluded in Appendix A-3, all emission reductions (current and historic) associated with the shutdown or modification of emission units and associated emission sources in Appendix A-3 shall be CD Emissions Reductions subject to the prohibitions in Paragraph 159 of this Consent Decree.  As specified in Appendix A-3, some emission reductions associated with shutdown or modified emission units or associated emission sources in Appendix A-3 are excluded from the definition of CD Emissions Reductions provided that such emission units or associated sources are exclusively used for permitting purposes for the Martinez NPR Facility."

11.   *The table in Paragraph 158.a of the 2016 Consent Decree for emission limits and standards that survive Termination of the Consent Decree is modified to include the following Martinez Facility emission limits and standards (all other Covered Refinery entries remain unchanged):*

| Covered Refinery | Emission Limit or Standard | Consent Decree Paragraph Numbers |
| --- | --- | --- |
| …. | …. | …. |
| Martinez | | |
| | FCCU/CO Boiler:  Final CO Limit | ¶ 45 |
| | FCCU/CO Boiler:  Final NOx Limits | ¶ 43.b, c, d, e |
| | SAP Limits | ¶ 52 |
| | Sulfur Pit Requirements | ¶ 47 |
| | No. 6 Boiler Limits | ¶ 58.a |
| | Final Limits that Carried Over from 2005 Martinez Consent Decree in Appendix A-2 | Appendix A-2 |
| | Heater and Boiler $NO_X$ and $H_2S$ Limits | Appendix A-4 |
| …. | …. | …. |

12.   *Paragraph 158.b.i of the 2016 Consent Decree is modified to include Martinez Non-Petroleum Refinery Facility flare requirements that survive Termination of the Consent Decree by (i) deleting and replacing the introductory text (i.e., the text prior to the table); and (ii) including in the Paragraph 158.b.i table new rows at the end of the table (i.e., after the row*

*with the entries "Applicability Determination for Flares" and "¶ 151") as follows (all other*

*entries remain unchanged):*

"….

b.   <u>Certain Other Requirements</u>.

i.   <u>Flares and Control of Flaring Events at Covered Refineries</u>.  The

following Consent Decree requirements shall constitute emission limits and standards that shall

survive Termination of this Consent Decree to the extent such requirements are applicable to a

Covered Flare under Appendix C - 2.1 or a Martinez NPR Facility Flare under Appendix A-5:"

| Requirement | Paragraph Numbers |
|---|---|
| …. | …. |
| Corresponding Requirements in Appendix A-5 for the Above Flaring Requirements, Except Applicability Determination for Flares (¶ 151) | Appendix A-5, ¶¶ 2, 5, 7-9, 15-26, 29 |
| $H_2S$ Limit | Appendix A-5 ¶ 33 |
| $H_2S$ Limit Monitoring | Appendix A-5 ¶ 34 |
| Root Cause and Corrective Action Analyses Requirements | Appendix A-5 ¶ 35 |
| Flare Minimization Plan | Appendix A-5 ¶ 36 |
| Recordkeeping and Reporting | Appendix A-5 ¶¶ 37-38 |
| General Work Practice Requirements | Appendix A-5 ¶¶ 39-40 |
| 40 C.F.R. §§ 63.670 and 63.671 Requirements | Appendix A-5 ¶ 41 |

13.   *The table in Paragraph 158.b.ii of the 2016 Consent Decree for all monitoring*

*requirements that survive Termination of the Consent Decree is modified to (i) change the first*

*row in the table by replacing "Refinery" with "Covered Refinery"; and (ii) include additional*

*Martinez monitoring requirements as follows (all other Covered Refinery entries remain*

*unchanged):*

| Covered Refinery | Monitoring Requirements |
|---|---|
| …. | …. |
| Martinez | ¶¶ 44, 46, 53 (including SAP Monitoring Plan attached as Appendix A-1), 58.a.i, Appendix A-4 |
| …. | …. |

14.    *The table in Paragraph 158.b.v of the 2016 Consent Decree for other specific-facility Consent Decree requirements that survive Termination of the Consent Decree is modified to include the following Martinez Facility requirements (all other Covered Refinery entries remain unchanged):*

| Covered Refinery | Requirement | Consent Decree Paragraph Numbers |
|---|---|---|
| …. | …. | …. |
| Martinez | | |
| | Martinez FCCU/Martinez FCCU SCR Operation | ¶ 43.a |
| | Delayed Coker Requirements | ¶¶ 49-51 |
| | SAP Applicability Determinations (NSPS A & H) | ¶ 54 |
| | Any Carry Over Applicability Determinations from Prior CD (except Monitoring Plans) | Appendix A-2 |
| | Fuel Oil Burning Restrictions | Appendices A-2 and A-4 |
| | Work Practice Requirements of Appendix A-4 | Appendix A-4, ¶ C.7 |
| …. | …. | …. |

15.    *As part of the resolution of the alleged violations of the 2016 Consent Decree Final Long-Term Martinez FCCU $NO_X$ Emission Limit, Paragraph 175 of the 2016 Consent Decree shall be modified to include the following new subparagraph 175.a to require Tesoro to pay a new civil penalty separate and apart from the civil penalties referred to in the pre-modified Paragraph 175:*

"a.    <u>Additional Civil Penalty Payment</u>.  By no later than 30 Days following the First Material Modification Effective Date, Tesoro Refining & Marketing Company LLC shall pay an additional civil penalty totaling $27,500,000.00 plus Interest accruing from November 1, 2020 (at the rate in effect on the day the First Material Modification is entered by the Court), to the United States in consideration for the resolution of civil liability set forth in Paragraph 219.d of this Consent Decree.  Payment of this additional civil penalty shall be made in the manner described in Paragraph 176 of this Consent Decree."

16.    *Paragraph 181 of the 2016 Consent Decree is deleted in its entirety and the following substituted in lieu thereof:*

"181.    For those provisions where a stipulated penalty of either a fixed amount or 1.2 or 1.5 times the economic benefit of delayed compliance is available, the decision of which alternative to seek shall rest exclusively within the discretion of the United States, after consultation with the Applicable State Co-Plaintiff.  Except for violations at the Anacortes, Kenai, Mandan, or Salt Lake City Refinery or the Martinez Facility, in no event shall any assessed stipulated penalty exceed $37,500 per Day for any individual violation of this Consent Decree.  For violations at the Anacortes, Kenai, Mandan, or Salt Lake City Refinery or the Martinez Facility, in no event shall any assessed stipulated penalty exceed the inflation-adjusted maximum civil penalty that may be assessed under the Clean Air Act (42 U.S.C. § 7413(b)), as codified at 40 C.F.R. Part 19 as of the date of the violation."

17.    *The introductory paragraph (i.e., the paragraph above the table) in Paragraph 188.a.v of the 2016 Consent Decree is deleted in its entirety and the following substituted in lieu thereof:*

"….

v.    Martinez Facility.  Tesoro Refining & Marketing Company LLC and/or, if applicable under Paragraph 6 of this Consent Decree, Tesoro Logistics L.P., and/or, if appliable under Paragraph 6 of this Consent Decree, Martinez Renewables LLC, shall be liable for the following stipulated penalties for violations of the requirements of Section V.E of this Consent Decree.  With regard to these stipulated penalties for the Martinez Facility only, "Offsets" shall be defined as emission reductions that are:  (i) in excess of the reductions required by any applicable law, regulation, rule, permit, or civil, administrative, or criminal settlement or judgment; (ii) real, permanent, quantifiable, and federally-enforceable; and (iii) not otherwise prohibited by any applicable law, regulation, rule, permit, or civil, administrative, or criminal settlement or judgment.  All Offsets shall be for $NO_X$ only (e.g., there can be no inter-pollutant trading or substitution).  Furthermore, with regard to these stipulated penalties of the Martinez Facility only, "voluntarily complying" shall mean adherence to a more stringent emission limit than required under any applicable law, regulation, rule, permit, or civil, administrative, or criminal settlement or judgment.  Nothing in this Paragraph 188.a.v prohibits Tesoro from requesting EPA's approval of a different Offset payment plan, which the United States may consider under the provisions of Paragraph 186; however, EPA's decision to approve or disapprove such plan is not subject to the dispute resolution procedures of Section XV of this Consent Decree."

18.    *The table in Paragraph 188.a.v of the 2016 Consent Decree for stipulated penalties for violations (except those pertaining to ELDAR and Covered Flares) at the Martinez Facility (formerly titled "Martinez Refinery," but replaced above with "Martinez Facility") is modified as follows:*

a.      Subparagraph 188.a.v.(a) ("Violations of Paragraph 43") is deleted and the following substituted in lieu thereof (subparagraphs 188.a.v.(b) through (dd) remain unchanged):

| Consent Decree Violation | Period of Delay or Non-Compliance or Other Measure as Indicated | Penalty Per Violation Per Day or Other Time Period or Measure as Indicated |
|---|---|---|
| (a).(i) Violation of Paragraph 43.a.  Failure to install, maintain, or operate the Martinez FCCU SCR, and/or failure to operate the Martinez FCCU SCR at all times the Martinez FCCU is operating in accordance with Paragraph 43.a. | Days 1-30: | $1500 |
| | Days 31-60: | $2000 |
| | Days 61 and beyond: | $3000, or an amount equal to 1.5 times the economic benefit of delayed compliance, whichever is greater. |
| (a).(ii) Violation of Paragraph 43.b or 43.e.ii.  Failure to comply with the Short-Term Martinez FCCU $NO_X$ Emission Limit established in Paragraph 43.b; or, if applicable, the Short-Term Martinez FCCU CO Boiler Shutdown $NO_X$ Emission Limit established in Paragraph 43.e.ii. | Days 1-90: | $5000 per FCCU per Day on which the specified 7-day rolling average exceeds the applicable limit (or, if applicable, $5000 per Day on which the specified FCCU CO Boiler Shutdown $NO_X$ Limit is exceeded). |
| | Days 91 and beyond: | $10000 per FCCU per Day on which the specified 7-day rolling average exceeds the applicable limit (or, if applicable, $10000 per Day on which the specified FCCU CO Boiler Shutdown $NO_X$ Limit is exceeded); or, an amount equal to 1.5 times the economic benefit of delayed compliance, whichever is greater. |
| (a).(iii) Violation of Paragraph 43.b.  Failure to comply with the Long-Term Martinez FCCU $NO_X$ Emission Limit established in Paragraph 43.b. | Days 1-90:<br><br>• $5000 per FCCU per Day on which the specified 365-day rolling average exceeds the applicable limit; and | |

| | Offsets for NO$_X$ emissions above the limit (except for the first 2.5 tons of NO$_X$ in a calendar year, rounded to the nearest half ton), with Offsets obtained no later than 3 years after each Day of violation (such Offsets may be derived from voluntarily complying with a FCCU 365-day NO$_X$ limit more stringent than the Long-Term Martinez FCCU NO$_X$ Emission Limit; but may not be derived from any surrender or retirement of banked emission reduction credits). | |
|---|---|---|
| | Days 91 and beyond:<br><br>• $10000 per FCCU per Day on which the specified 365-day rolling average exceeds the applicable limit, or an amount equal to 1.5 times the economic benefit of delayed compliance, whichever is greater; and<br>• 2 times Offsets for NO$_X$ emissions above the limit (except for the first 2.5 tons of NO$_X$ in a calendar year, rounded to the nearest half ton), with Offsets obtained no later than 3 years after each Day of violation (such Offsets may be derived from voluntarily complying with a FCCU 365-day NO$_X$ limit more stringent than the Long-Term Martinez FCCU NO$_X$ Emission Limit; but may not be derived from any surrender or retirement of banked emission reduction credits) | |
| (a).(iv) <u>Violation of Paragraph 58.a.</u> Failure to comply with the 15 ppmvd NO$_X$ emission limit, the 30.6 tons per year NO$_X$ emission limit, or the 465 MMBtu/hr maximum firing rate for the No. 6 Boiler established in Paragraph 58.a. | Days 1-30: | $500 |
| | Days 31-60: | $1000 |
| | Days 61 and beyond: | $2000, or an amount equal to 1.2 times the economic benefit or delayed compliance, whichever is greater |
| (a).(v) <u>Violation of Paragraph 58.a.i.</u> Failure to install, certify, calibrate, maintain, and/or operate a NO$_X$ CEMS, O$_2$ CEMS, stack flue gas flow meter, or fuel flow meter for the No. 6 Boiler as required by Paragraph 58.a.i. | Days 1-30: | $500 per unit per Day |
| | Days 31-60: | $1000 per unit per Day |
| | Days 61 and beyond: | $2000 per unit per Day, or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |
| (a).(vi) <u>Violation of Paragraph 58.b</u> or <u>Paragraph 188.a.v.(a).(iii).</u> Failure or late surrender of emission reduction credits under Paragraph 58.b or failure or late | $200,000 for each ton NO$_X$ per year not surrendered or obtained by the applicable deadline | |

| | | |
|---|---|---|
| obtaining of Offsets under this Paragraph 188.a.v.(a).(iii). | | |
| (a).(vii) <u>Violation of Paragraph 58.c.</u> Failure to idle an emission unit or associated emission source in Appendix A-3 as required by Paragraph 58.c. | Days 1-90: | $5000 per unit or source per Day |
| | Days 91 and beyond: | $10000 per unit or source per Day, or an amount equal to 1.5 times the economic benefit of delayed compliance, whichever is greater. |
| (a).(viii)  <u>Violation of Paragraph 58.c.i or Paragraph 59.e.i-ii.</u>  Failure to shut down or surrender all permits prior to transferring the ownership or operation of an emission unit or associated emission source in Appendix A-3 as required by Paragraph 58.c.i, or failure to permanently shut down or surrender all permits of an emission unit or associated emission source in Appendix A-3 as required by Paragraph 59.e.i-ii. | Days 1-90: | $5000 per unit or source per Day |
| | Days 91 and beyond: | $10000 per unit or source per Day, or an amount equal to 1.5 times the economic benefit of delayed compliance, whichever is greater. |
| (a).(ix)  <u>Violation of Paragraph 58.c.i or Paragraph 59.e.iii.</u>  Failure to render Martinez No. 6 Boiler or Martinez FCCU permanently inoperable prior to transfer of ownership as required by Paragraph 58.c.i. or permanently inoperable as required by Paragraph 59.e.iii. | Days 1-90: | $5000 per unit or source per Day |
| | Days 91 and beyond: | $10000 per unit or source per Day, or an amount equal to 1.5 times the economic benefit of delayed compliance, whichever is greater. |

     *b.*    *New subparagraphs 188.a.v.(ee)-(ooo) for violations of new Appendices*

*A-4, A-5, and A-6 are added after subparagraph 188.a.v.(dd) as follows (subparagraphs*

*188.a.v.(b) through (dd) remain unchanged):*

| **Violations of Appendix A-4 of this Consent Decree** | **Period of Delay or Non-Compliance or Other Measure as Indicated** | **Penalty Per Violation Per Day or Other Time Period or Measure as Indicated** |
|---|---|---|
| (ee) <u>Violation of Appendix A-4, Section B.</u> Failure to achieve the final emission reduction goals in accordance with Appendix A-4, Section B. | $200,000 per quarter. | |

| (ff) <u>Violation of Appendix A-4, Paragraph 4</u>.  Burning Fuel Oil in a manner inconsistent with the requirements of Appendix A-4, Paragraph 4. | Days 1-30: | $1750 per unit per Day |
| | Days 31 and beyond: | $5000 per unit per Day or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |
| (gg) <u>Violation of Appendix A-4, Paragraph 5</u>.  Failure to comply with the $H_2S$ limit established in Appendix A-4, Paragraph 5. | Days 1-30: | $500 per unit per Day |
| | Days 31-60: | $1000 per unit per Day |
| | Days 61 and beyond: | $2000 per unit per Day or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |
| (hh) <u>Violation of Appendix A-4, Section B or Paragraph C.6</u>.  Failure to conduct any performance test; or to install, calibrate, and operate a CEMS or CMS. | Days 1-30: | $500 |
| | Days 31-60: | $1,000 |
| | Days 61 and beyond: | $2000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |
| **Violations of Appendix A-5 of this Consent Decree** | **Period of Delay or Non-Compliance or Other Measure as Indicated** | **Penalty Per Violation Per Day or Other Time Period or Measure as Indicated** |
| (ii) <u>Violation of Appendix A-5, Paragraphs 2-3</u>.  Failure to timely upgrade or replace, if necessary to ensure an acceptable level of control over flow, Sweep and Purge Gas flow meters that conform to the requirements of Appendix A-5, Paragraph 2 or failure to timely implement the measures necessary to minimize Sweep and Purge Gas flow as required by Appendix A-5, Paragraph 3. | Days 1-30: | $250 per Meter per Day |
| | Days 31-60: | $500 per Meter per Day |
| | Days 61 and beyond: | $1250 per Meter per Day. |
| (jj) <u>Violation of Appendix A-5, Paragraph 4</u>.  Failure to timely complete the Initial PRV Leak Survey as required by Appendix A-5, Paragraph 4. | Days 1-30: | $250 |
| | Days 31-60: | $500 |

|  |  |  |
|---|---|---|
|  | Days 61 and beyond: | $1250. |
| (kk) <u>Violation of Appendix A-5, Paragraph 4</u>.  Failure to timely repair each leaking PRV as required by Appendix A-5, Paragraph 4. | Days 1-30: | $500 |
|  | Days 31-60: | $700 |
|  | Days 61 and beyond: | $1000. |
| (ll) <u>Violation of Appendix A-5, Paragraphs 5, 7-8 and 26</u>.  Failure to timely install the equipment and monitoring systems as required by Appendix A-5, Paragraphs 5, 7-8 and 26. | Days 1-30: | $750 per monitoring system per Day |
|  | Days 31-60: | $1250 per monitoring system per Day |
|  | Days 61 and beyond: | $2000 per monitoring system per Day or an amount equal to 1.2 times the economic benefit of delayed compliance. |
| (mm) <u>Violation of Appendix A-5, Paragraphs 5, 8 and 26</u>.  Failure to operate the monitoring instrument as required by Appendix A-5, Paragraphs 5, 8 and 26. | **Per monitoring instrument, number of Hours per Calendar Quarter of Downtime over 5% of the time that the Martinez NPR Flare is In Operation and Capable of Receiving Sweep, Supplemental, and/or Waste Gas in a six-month period** | **Penalty per Hour per monitoring instrument:** |
|  | 0.25-100.0 | $250 |
|  | 100.25-200.0 | $500 |
|  | Over 200.0 | $1000 |
|  | For any monitoring system that serves as a dual purpose, this stipulated penalty applies per instrument only. | |
| (nn) <u>Violation of Appendix A-5, Paragraph 7</u>.  Failure to comply with the equipment and instrumentation technical specifications and quality assurance/quality | **Type of Requirement** | **Penalty per Violation per day** |
|  | Daily requirement | $100 |

<u>United States, et al. v. Tesoro, et al.</u> (W.D. Tex)
First Material Modification to the Consent Decree

Page 29

| control specifications and requirements in Appendix C - 1.10. | Quarterly requirement | $200 |
| | Annual requirement | $300. |
| **Violations of Appendix A-5 of this Consent Decree** | **Period of Delay or Non-Compliance or Other Measure as Indicated** | **Penalty Per Violation Per Day or Other Time Period or Measure as Indicated** |
| (oo) <u>Violation of Appendix A-5, Paragraphs 12-13</u>.  Failure to submit an Initial Flare Management Plan as required by Appendix A-5, Paragraph 12 and subsequent plans required by Appendix A-5, Paragraphs 12-13. | Days 1-30: | $500 |
| | Days 31-60: | $750 |
| | Days 61 and beyond: | $1000. |
| (pp) <u>Violation of Appendix A-5, Paragraph 15</u>.  Failure to timely install, in accordance with Appendix A-5, Paragraph 15 and Appendix 2.1, a Flare Gas Recovery System that conforms to the requirements of Appendix A-5, Paragraph 15. | Days 1-30: | $1250 per FGRS |
| | Days 31-60: | $3000 per FGRS |
| | Days 61 and beyond: | $5000 per FGRS or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |
| (qq) <u>Violation of Appendix A-5, Paragraphs 15-16</u>.  Failure to have the required number of Compressors at each FGRS Available for Operation and/or In Operation 98% of the time or failure to have the required number of Compressors at each FGRS Available for Operation and/or In Operation 95% of the time as required by Appendix A-5, Paragraphs 15-16. | $750 Per FGRS, per hour or fraction thereof – in a rolling 8760-hour period that a Compressor required to be Available for Operation is not Available for Operation. | |
| (rr) <u>Violation of Appendix A-5, Paragraph 17</u>.  Failure to comply with the facility-wide, 30-day Rolling Average limit on Waste Gas flaring as required by Appendix A-5, Paragraph 17. | **Magnitude of Exceedance** | **Penalty per Martinez NPR Facility per Day** |
| | $\leq$ 10% | $6250 |
| | >10% to $\leq$ 20% | $12,500 |
| | >20% | $18,750. |

| (ss) Violation of Appendix A-5, Paragraph 17.  Failure to comply with the facility-wide 365-day Rolling Average limit on Waste Gas flaring as required by Appendix A-5, Paragraph 17. | **Magnitude of Exceedance** | **Penalty per Martinez NPR Facility per Day** |
|---|---|---|
| | ≤ 10% | $12,500 |
| | >10% to ≤ 20% | $18,750 |
| | >20% | $37,500. |

| (tt) For any given Day, where a failure to comply with the 30-day and/or the 365-day Rolling Average limit on Waste Gas flaring required by Appendix A-5, Paragraph 17 (and potentially subject to the stipulated penalty provisions of Paragraph 188.a.v.rr-ss) is the result of a failure to have the requisite number of Compressors Available for Operation as required by Appendix A-5, Paragraphs 15-16 (and potentially subject to the stipulated penalty provision of Paragraph 188.a.v.qq) only the stipulated penalty provision that results in the higher penalty shall be applicable for that Day (i.e., the stipulated penalties under Paragraphs 188.a.v.qq, 188.a.v.rr and 188.a.v.ss shall not be assessed).  Nothing in the previous sentence shall be construed to result in only one penalty being applicable on any given Day for violation of both the 30-day and the 365-day Rolling Average limits on Waste Gas flaring (i.e., for any given Day in which both the 30-day Rolling Average limits are violated, stipulated penalties under both Paragraphs (188.a.v.rr and 188.a.v.ss may be assessed). |
|---|

| (uu) Violation of Appendix A-5, Paragraph 20.  Failure to comply with the Automatic Control System required by Appendix A-5, Paragraph 20. | $500 per Flare per Day. | |
|---|---|---|
| (vv) Violation of Appendix A-5, Paragraphs 24, 25.e and 30-31.  Failure to record and retain any information as required by Appendix A-5, Paragraphs 24, 25.e and 30-31. | $100 per Day. | |
| **Violations of Appendix A-5 of this Consent Decree** | **Period of Delay or Non-Compliance or Other Measure as Indicated** | **Penalty Per Violation Per Day or Other Time Period or Measure as Indicated** |
| (ww) Violation of Appendix A-5, Paragraphs 25.d.i and ii.  Failure to ensure that a Portable Flare that falls under the conditions of Appendix A-5, Paragraphs 25.d.i and ii complies with the requirements of those Paragraphs. | Days 1-7: | $1000 |
| | Days 8-15: | $2000 |
| | Days 16 and beyond: | $5000. |
| (xx) Violation of Appendix A-5, Paragraph 33.  Failure to comply with the H₂S limit established in Appendix A-5, Paragraph 33. | **On a per Martinez NPR Flare Basis, Hours of Non-compliance:** | **Penalty per Martinez NPR Flare per Hour:** |
| | No of hours: 1-50 | $50 per hour |

|  | No of hours: 51-100 | $100 per hour |
|  | No of hours: over 100 | $200 per hour |
|  | For purposes of calculating the number of hours of non-compliance with the $H_2S$ limit, all hours of violation shall be added together to determine the total.  The averaging period for this standard is a 3-hour Rolling Average.<br><br>The period for calculating a stipulated penalty under this Subparagraph is different than the averaging period of the underlying requirement.  For example, if Tesoro has an exceedance of a standard expressed as a 3-hour Rolling Average in 6 15-minute Block Periods, then the stipulated penalty would be assessed on 1.5 hours of violation. | |

| **Violations of Appendix A-5 of this Consent Decree** | **Period of Delay or Non-Compliance or Other Measure as Indicated** | **Penalty Per Violation Per Day or Other Time Period or Measure as Indicated** |
|---|---|---|
| (yy) <u>Violation of Appendix A-5, Paragraphs 34-40</u>.  Failure to comply with the monitoring, root cause and corrective action, flare minimization plan, recordkeeping, reporting, or general duty requirements of Appendix A-5, Paragraphs 34-40. | Days 1-30: | $500 |
|  | Days 31-60: | $1000 |
|  | Days 61 and beyond: | $2000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |
| (zz) <u>Violation of Appendix A-5, Paragraph 41</u>.  Failure to comply with any applicable requirement (including any monitoring, recordkeeping or reporting requirement) of 40 C.F.R. §§ 63.670 and 63.671 at a Martinez NPR Flare as required by Appendix A-5, Paragraph 41. | Days 1-30: | $500 per Martinez NPR Flare per Day |
|  | Days 31-60: | $1000 per Martinez NPR Flare per Day |
|  | Days 61 and beyond: | $2000 per Martinez NPR Flare per Day or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater. |

| Violations of Appendix A-6 of this Consent Decree | Period of Delay or Non-Compliance or Other Measure as Indicated | Penalty Per Violation Per Day or Other Time Period or Measure as Indicated |
|---|---|---|
| (aaa) <u>Violation of Appendix A-6, Paragraph 6</u>.  Failure to timely develop and complete a written facility-wide LDAR Program Plan, or to timely update the LDAR Program Plan as required by Appendix A-6, Paragraph 6. | Days 1-30: | $300 per Day per Martinez NPR Facility |
| | Days 31-60: | $400 per Day per Martinez NPR Facility |
| | Days 61 and beyond: | $500 per Day per Martinez NPR Facility. |
| (bbb) <u>Violation of Appendix A-6, Paragraph 7</u>.  Failure to perform initial, refresher, or new personnel training as required by Appendix A-6, Paragraph 7. | $1000 per person, per month of non-compliance | |
| (ccc) <u>Violation of Appendix A-6, Paragraphs 8-11</u>.  Failure to conduct an LDAR audit in accordance with schedule in Appendix A-6, Paragraphs 8-11. | Days 1-15: | $300 |
| | Days 16-30: | $400 |
| | Days 31 and beyond: | $500, not to exceed $100,000 per audit. |
| (ddd) <u>Violation of Appendix A-6, Paragraph 9</u>.  Failure to use a third-party auditor, or to use a third-party auditor that is not experienced in LDAR audits as required by Appendix A-6, Paragraph 9. | $25,000 per audit. | |
| (eee) <u>Violation of Appendix A-6, Paragraph 11</u>.  Failure to complete audit as required by Appendix A-6, Paragraph 11 or failure to substantially comply with the comparative monitoring requirements of Appendix A-6, Paragraph 11. | $50,000 per audit. | |
| (fff) <u>Violation of Appendix A-6, Paragraphs 11</u>.  Failure to comply with the requirements for LDAR Audits in Appendix A-6, Paragraphs 11.a-d, except for comparative monitoring. | $10,000 per missed requirement, not to exceed $100,000 per audit. | |
| (ggg) <u>Violation of Appendix A-6, Paragraph 13 or Paragraph 14</u>. Failure to timely develop and/or submit a Corrective Action Plan as required by Appendix A-6, Paragraph 13 or failure to timely submit a Certification of Compliance, as required by Appendix A-6, Paragraph 14. | Days 1-15: | $100 |
| | Days 16-30: | $250 |
| | Days 31 and beyond: | $500, not to exceed $100,000 per audit. |

| | | |
|---|---|---|
| (hhh) <u>Violation of Appendix A-6, Paragraph 13</u>.  Failure to implement corrective action within 90 Days after the LDAR Audit Completion Date, or pursuant to the approved schedule, as required by Appendix A-6, Paragraph 13. | Days 1 -15: | $500 |
| | Days 16 -30: | $750 |
| | Days 31 and beyond: | $1000, not to exceed $200,000 per audit. |
| (iii) <u>Violation of Appendix A-6, Paragraph 16</u>.  Improperly placing a piece of Covered Equipment on the DOR list. | Valves | $300 per Day per component, not to exceed $75,000. |
| | Pumps | $1200 per Day per component, not to exceed $300,000. |
| (jjj) <u>Violation of Appendix A-6, Paragraph 16.a</u>.  Failure of the relevant manager or official to sign-off on placing a piece of Covered Equipment on the DOR list as required by Appendix A-6, Paragraph 16.a. | $250 per piece of Covered Equipment. | |
| (kkk) <u>Violation of Appendix A-6, Paragraph 16.c</u>.  Failure to comply with the 0.10% limit on valves that may be placed on the DOR list as required by Appendix A-6, Paragraph 16.c. | $5,000 per valve. | |
| (lll) <u>Violation of Appendix A-6, Paragraph 17</u>.  Failure to add a piece of Covered Equipment to the LDAR program as required by Appendix A-6, Paragraph 17. | $300 per piece of Covered Equipment. | |
| (mmm) <u>Violation of Appendix A-6, Paragraph 17</u>.  Failure to remove a piece of Covered Equipment from the LDAR program as required by Appendix A-6, Paragraph 17. | $150 per piece of Covered Equipment. | |
| (nnn) <u>Violation of Appendix A-6, Paragraph 18</u>.  Failure of a monitoring technician to complete the certification as required by Appendix A-6, Paragraph 18. | $100 per failure, per technician. | |
| (ooo) <u>Violation of Appendix A-6, Paragraph 19</u>.  Failure to comply with QA/QC requirements in Appendix A-6, Paragraph 19. | $1000 per missed requirement, per year. | |

19.   *The introductory paragraph (i.e., the paragraph above the table) in Paragraph 188.b of the 2016 Consent Decree is deleted in its entirety and the following substituted in lieu thereof (the table remains unchanged):*

"….

b.    <u>Violations of ELDAR Program Requirements at Covered Process Units</u>. Except for the Martinez NPR Facility, the Settling Defendant(s) responsible for compliance at each Covered Refinery as specified in Paragraph 6 of this Consent Decree shall be liable for the following stipulated penalties for violations of the requirements of Section VI.A (ELDAR Program Requirements):

…."

20.   *The introductory paragraph (i.e., the paragraph above the table) in Paragraph 188.c of the 2016 Consent Decree is deleted in its entirety and the following substituted in lieu thereof (the table remains unchanged):*

"….

c.    <u>Violations of Flaring Requirements at Covered Flares</u>.  Except for the Martinez NPR Facility, the Settling Defendant(s) responsible for compliance at each Covered Refinery as specified in Paragraph 6 of this Consent Decree shall be liable for the following stipulated penalties for violations of the requirements of Section VI.B (Requirements for Control of Flaring Events).

…."

21.   *Paragraph 219 of the 2016 Consent Decree shall be modified to include the following new subparagraph 219.d (all other language in Paragraph 219 remains unchanged):*

"….

       d.  <u>Resolution of Claims for Violations of FCCU Emission Limits at the Martinez</u>

<u>Refinery</u>.  With respect to the following pollutant from the process unit at the Martinez Refinery

listed in the table below, entry by the Court of the First Material Modification to the Consent

Decree shall resolve the civil claims of the United States against Tesoro Refining & Marketing

Company LLC and Tesoro Logistics L.P. for the following violations of this Consent Decree

through the dates indicated in the following table, as well as for Clean Air Act claims based on

violation of any federally-enforceable state or local rule, regulation, or permit that incorporates

the listed Consent Decree requirement into a Clean Air Act permit during the time period listed

in the table below:"

| Process Unit | Pollutant | Alleged Consent Decree Violation | Dates of Release |
|---|---|---|---|
| Martinez FCCU | $NO_X$ | Failure to comply with the Final Long-Term Martinez FCCU $NO_X$ Emission Limit in Paragraph 43.b of this Consent Decree, as Paragraph 43.b existed on September 28, 2016 (i.e., prior to any modifications to the Consent Decree) | July 1, 2018 through First Material Modification Lodging Date |

    22.    *Paragraph 222 of the 2016 Consent Decree is modified to replace the reference*

*to the Martinez Refinery with Martinez Facility as follows (all other language in Paragraph 222*

*remains unchanged):*

        "….

        Section V.E (Martinez Facility Requirements)

        …."

    23.    *Paragraph 249 of the 2016 Consent Decree shall be modified to change the*

*addresses for the Department of Justice, EPA Headquarters, EPA Region 9, Tesoro, and Tesoro*

*Logistics L.P. as follows:*

"….

As to the United States:

Submit electronically to:
EENRDb9c1@ENRD.USDOJ.GOV

If unable to submit electronically, then submit to:
The Department of Justice
Case No. DJ:  90-5-2-1-09512/1
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611

Overnight Address
150 M. Street N.E.
Washington, D.C. 20002

**EPA Headquarters**

Submit electronically to:
argentieri.sabrina@epa.gov,
foley.patrick@epa.gov, and
refinerycd@erg.com

If unable to submit electronically, then submit to:
Director, Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
Mail Code 2242-A
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460-0001

And

Director, Air Enforcement Division
Office of Civil Enforcement
c/o Eastern Research Group, Inc.
14555 Avion Parkway, Suite 200
Chantilly, VA 20151-1124
….

Region 9:

Submit electronically to both:
AEO_R9@epa.gov and
mintz.tom@epa.gov

If unable to submit electronically, then submit to:
Manager, Air Enforcement Section (ENF-2-1)
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency Region 9
75 Hawthorne Street
San Francisco, California 94105
….

As to Tesoro

R. Benjamin Franz
Assistant General Counsel – Refining Environmental
Marathon Petroleum Corporation
539 South Main Street
Findlay, Ohio 45840
rbfranz@marathonpetroleum.com

Ruth A. Cade
Director, Refining Environmental
Marathon Petroleum Corporation
539 South Main Street
Findlay, Ohio 45840
racade@marathonpetroleum.com

Consent Decree Coordinator (Tesoro CD)
Marathon Petroleum Corporation
539 South Main Street
Findlay, Ohio 45840

As to Tesoro Logistics L.P.

Sherry L. Hesselbein
Deputy General Counsel – Environment, Safety & Security
Marathon Petroleum Corporation
539 South Main Street
Findlay, Ohio 45940
shesselbein@marathonpetroleum.com

Harold Rinehart
Vice President – Environment, Safety & Security
MPLX LP
539 South Main Street
Findlay, Ohio 45940
herinhart@marathonpetroleum.com

….”

24.    *The following new Section shall be inserted after Section XX (Modification) and before Section XXI (Termination) of the 2016 Consent Decree:*

"**XX.A.   26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION**

252A.  As to the Martinez Facility, for purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), with respect to obligations incurred under performance of Section V (Affirmative Relief Applicable to Specific Refineries), Paragraphs 43 and 58; Section X (Reporting and Recordkeeping), Paragraphs 170 and 172-173; and Section XIII (Right of Entry), Paragraph 192, is restitution or required to come into compliance with the law.”

25.    *Paragraph 253.e of the 2016 Consent Decree is modified to replace the reference to the Martinez Refinery with Martinez Facility as follows (all other language in Paragraph 253 remains unchanged):*

"….

e.    Section V.E (Martinez Facility Requirements)

….”

26.    *The introductory paragraph (i.e., the paragraph above Paragraph 257.b.i) in Paragraph 257.b and Paragraph 257.b.viii of the 2016 Consent Decree are deleted in their*

*entirety and the following substituted in lieu thereof (all other language in Paragraph 257 remains unchanged):*

"b.   <u>Termination of other Tesoro Obligations and Requirements Under this Consent Decree</u>.  The remaining requirements and obligations of this Consent Decree may be terminated as to Tesoro, Tesoro Logistics L.P., Martinez Renewables LLC, and the Tesoro Refineries, once Tesoro, Tesoro Logistics L.P., and Martinez Renewables LLC have completed and satisfied all of the following requirements of this Consent Decree at all Tesoro Refineries:

….

viii.   In addition to the requirements of this Paragraph 257.b.i-vii, (i) operation of the Martinez SAP for at least two years in compliance with Paragraphs 52 through 56 and Appendix A-1 and certification of such compliance; (ii)  either operation of the Martinez FCCU for at least six years after the First Material Modification Effective Date in compliance with Paragraphs 43 and 44 and certification of such compliance, or rendering the Martinez FCCU permanently inoperable in compliance with Paragraphs 58.c.i or 59.e.iii; (iii) either operation of the Martinez No. 6 Boiler for at least six years after the First Material Modification Effective Date in compliance with Paragraph 58.a and certification of such compliance, or rendering the Martinez No. 6 Boiler permanently inoperable in compliance with Paragraphs 58.c.i or 59.e.iii; (iv) operation of the Martinez NPR Facility for at least six years after the First Material Modification Effective Date or at least two years after the Notice of Conversion in Paragraph 59, whichever is earlier, in compliance with Paragraph 59 and Appendices A-1, A-4, A-5, and A-6 and certification of such compliance; (v) BAAQMD's receipt of all credit retirements required by Paragraph 58.b; (vi) unit shutdown and BAAQMD's receipt of all permit surrenders required by Paragraph 58.c.i, Paragraph 59.e, and Appendix A-3; and (vii) unit shutdown and

BAAQMD's receipt of all permit surrenders for all units included in Appendix A-3 that remain idled because neither the requirements of Paragraph 58.c.i nor the requirements of Paragraph 59.e have ever been applicable.  For the purpose of this Paragraph 257.b.viii, "operation" shall mean continuous operation, except during Scheduled Turnarounds of the Martinez Facility or temporary, short-term shutdowns associated with maintenance or unplanned events."

27.    *Paragraph 262 of the 2016 Consent Decree is modified to delete the Appendix A title and list in its entirety and the following substituted in lieu thereof (all other language in Paragraph 262 remains unchanged):*

"….

Appendix A:  Martinez Facility

A-1:  SAP Monitoring Plan

A-2:  2005 CD Appendix

A-3:  Martinez Facility Emission Unit Permanent Shutdown

A-4:  Martinez NPR Facility Heaters and Boilers Requirements

A-5:  Martinez NPR Facility Flaring Requirements

A-6:  Martinez NPR Facility LDAR Requirements"

28.    *Appendix A-1 of the 2016 Consent Decree (Martinez SAP Monitoring Plan) is modified as follows:*

a.    *The subtitle of Appendix A-1 ("CEMS Plan for $SO_2$ Emissions for the Martinez Refinery Double Absorption SAP") of the 2016 Consent Decree is deleted and replaced as follows:*

"**CEMS Plan for $SO_2$ Emissions for the Martinez Facility Double Absorption SAP**".

  b. *The definition of "SAP Operating Periods" of Appendix A-1 is deleted in its entirety and the following substituted in lieu thereof:*

    "....

    "SAP Operating Periods" shall mean, for the purposes of this Martinez SAP Monitoring Plan, periods during which acid gas is being fed to the Martinez SAP.  For the purpose of this definition, "acid gas" shall include, but not be limited to, spent acid from the alkylation plant, hydrogen sulfide from diethanolamine unit strippers, sulfuric acid from the Martinez SAP, or vent gas from the Martinez SRP Sulfur Pit(s)."

  29. *The 2016 Consent Decree is modified to include the following new appendices: (i) Appendix A-3 (Martinez Facility Emission Unit Permanent Shutdown); (ii) Appendix A-4 (Martinez NPR Facility Heaters and Boilers Requirements); (iii) Appendix A-5 (Martinez NPR Facility Flaring Requirements); and (iv) Appendix A-6 (Martinez NPR Facility LDAR Requirements).  These new appendices are attached to this First Material Modification to the Consent Decree and shall become part of the Consent Decree upon approval and entry of this First Material Modification to the Consent Decree.*

  30. *The changes to the Consent Decree pursuant to this First Material Modification to the Consent Decree are reflected in the attached redlined Consent Decree with deletions in strikeout and red and replacement text and insertions in blue and double-underlined.  The changes to the Consent Decree pursuant to the First Non-Material Modification (ECF No. 15) and the Second Non-Material Modification (ECF No. 16) are not redlined but are indicated by comments.  The pagination of the redlined Consent Decree has changed from the original and the signature pages and original appendices have been omitted.*

31.     *The undersigned representatives are fully authorized to enter into the terms and conditions of this First Material Modification to the Consent Decree.  This First Material Modification to the Consent Decree may be executed in several parts, each of which will be considered an original.*


## <u>ORDER</u>

Before the taking of any testimony, without adjudication of any issue of fact or law, and upon consent and agreement of the United States and Tesoro, it is:

ORDERED, ADJUDGED, AND DECREED that the foregoing First Material Modification to the Consent Decree is hereby approved and entered as a final order of this Court.


Dated and entered this _____ day of _____, 202__.


_____
Orlando L. Garcia
United States District Judge
Western District of Texas

THE UNITED STATES HEREBY CONSENTS TO ENTRY OF THE FIRST MATERIAL MODIFICATION TO THE CONSENT DECREE IN <u>UNITED STATES ET AL. v. TESORO ET AL.</u>, SUBJECT TO THE PUBLIC NOTICE REQUIREMENTS OF 28 C.F.R. § 50.7.

**FOR THE UNITED STATES OF AMERICA:**

**THE UNITED STATES DEPARTMENT OF JUSTICE**

DATE:     April 20, 2023         /s/ Todd Kim
                                 TODD SUNHWAE KIM
                                 Assistant Attorney General
                                 Environment and Natural Resources Division

DATE:     April 20, 2023         /s/ Elizabeth L. Loeb
                                 ELIZABETH L. LOEB
                                 Senior Counsel
                                 Environmental Enforcement Section
                                 Environment and Natural Resources Division
                                 P.O. Box 7611
                                 Washington, D.C.  20044
                                 Elizabeth.Loeb@usdoj.gov
                                 (202) 616-8916

JAIME ESPARZA
United States Attorney


DATE:   _____April 21, 2023_____     /s/ John M. Deck_____

JOHN M. DECK
Assistant United States Attorney
Texas Bar No. 24074120
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7388
Fax: (210) 384-7322
Email: john.deck@usdoj.gov

**THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, OFFICE OF ENFORCEMENT AND COMPLIANCE ASSURANCE**

LAWRENCE STARFIELD

Digitally signed by LAWRENCE STARFIELD
Date: 2023.04.25 14:11:33 -04'00'

_____

LAWRENCE E. STARFIELD
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

ROSEMARIE KELLEY
Office Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

MARY E. GREENE
Division Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

**THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION 9**

DATE: _____

SYLVIA QUAST

Digitally signed by SYLVIA QUAST
Date: 2023.03.13 18:29:53 -07'00'

SYLVIA QUAST
Regional Counsel
United States Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California  94105

Of Counsel:

THOMAS P. MINTZ
Assistant Regional Counsel
United States Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California  94105

TESORO REFINING & MARKETING COMPANY LLC HEREBY CONSENTS TO ENTRY OF THE FIRST MATERIAL MODIFICATION TO THE CONSENT DECREE IN <u>UNITED STATES ET AL. v. TESORO ET AL.</u>

**FOR TESORO REFINING & MARKETING COMPANY LLC:**

DATE:   _3-1-2023_                  _____

TIMOTHY J. AYDT
President
Tesoro Refining & Marketing Company LLC
539 South Main Street
Findlay, Ohio  45840

MARTINEZ RENEWABLES LLC HEREBY CONSENTS TO ENTRY OF THE FIRST MATERIAL MODIFICATION TO THE CONSENT DECREE IN <u>UNITED STATES ET AL.</u> <u>v. TESORO ET AL.</u>

**FOR MARTINEZ RENEWABLES LLC:**

DATE: 08 Mar 2023

RAJIV KAPURIA
President
Martinez Renewables LLC
539 South Main Street
Findlay, Ohio  45840